Affirmed and Majority and Dissenting Opinions filed August 25,
2011.



 



In The

 

Fourteenth Court of
Appeals

                                                                                          



NO. 14-09-00892-CV



 

Elizabeth Thomas, Appellant

V.

Dorothy Elizabeth Cook &
Ardyss International, Inc.,
Appellees

 



On Appeal from the 333rd
District Court

Harris County, Texas

Trial Court Cause No. 2008-50750



 

MAJORITY OPINION



Elizabeth Thomas appeals from the trial court’s final
judgment confirming an arbitration award in favor of Ardyss International, Inc.
and Dorothy Cook.  We affirm.

BACKGROUND

Cook and Thomas signed a “Distribution Contract” with
Ardyss in 2007.  Under this contract, Cook and Thomas were to receive
commissions and bonuses for their joint efforts to sell Ardyss products
including cosmetics, underwear, and weight loss supplements.  Cook and Thomas jointly
signed a single copy of the Distribution Contract; Cook signed in the space
designated for the “Applicant” and Thomas signed in the space designated for the
“Co-Applicant.”

The Distribution Contract signed by Cook and Thomas
specifically incorporates the Ardyss Policies and Procedures Manual.  Section
9.3 of the manual includes the following arbitration provision:

Any controversy or claim
arising out of or relating to the Agreement, or the Breach thereof, shall be
settled by arbitration administered by the American Arbitration Association
under its Commercial Arbitration Rules, and judgment on the award rendered by
the arbitrator may be entered in any court having jurisdiction thereof.  Distributors
waive all rights to trial by jury or to any court.  All arbitration proceedings
shall be held in Las Vegas, Nevada.  All parties shall be entitled to all
discovery rights pursuant to the Federal Rules of Civil Procedure.  There shall
be one arbitrator, an attorney at law, who shall have expertise in business law
transactions with a strong preference being an attorney knowledgeable in the
direct selling industry, selected from the panel which the American Arbitration
Panel provides.  Each party to the arbitration shall be responsible for its own
costs and expenses of arbitration, including legal and filing fees. The
decision of the arbitrator shall be final and binding on the parties and may,
if necessary, be reduced to a judgment in any court of competent jurisdiction. 
This agreement shall survive any termination or expiration of the Agreement.

Section 9.4 of the manual
states that “[t]he Federal Arbitration Act shall govern all matters relating to
arbitration.”

Thomas sued Cook in August 2008, contending among
other things that Cook had (1) created a new entity; and then (2) diverted
Ardyss commission checks arising from their joint sales efforts to this entity
instead of splitting the commissions between Thomas and Cook as required under
the Distribution Contract.  Thomas alleged that Ardyss violated the Distribution
Contract by issuing commission checks to the new entity created by Cook, but
she did not sue Ardyss in this pleading.  Thomas asserted claims against Cook for
tortious interference with prospective business advantage; breach of the
Distribution Contract; conversion; and fraud.  She also sought a temporary
injunction and a declaratory judgment regarding the rights and responsibilities
for payment of commissions and bonuses under the Distribution Contract.  Cook
answered with a general denial and asserted several affirmative defenses.

Thomas filed an amended petition in September 2008
and added Ardyss as a defendant.  As to Cook, Thomas dropped her tortious
interference claim and asserted claims for breach of the Distribution Contract;
conversion; fraud; and money had and received.  Thomas sued Ardyss for breach
of the Distribution Contract.  Thomas also requested a temporary injunction,
along with a declaratory judgment “that sets out the rights and responsibilities
regarding payment of commissions and bonuses under the Distribution Contract .
. . .”  Ardyss responded with a general denial and asserted several affirmative
defenses.

Shortly after Thomas filed her amended petition,
Ardyss and Cook filed a joint motion to compel arbitration under the Federal
Arbitration Act.  See 9 U.S.C. § 3 (2009).  The trial court conducted a
hearing on the motion in October 2008 but withheld its ruling.  At a hearing on
Thomas’s request for a temporary injunction held on October 14, 2008, the trial
court orally ruled on the motion to compel and stated:  “I am compelling
arbitration.”  However, the parties agreed to mediate their dispute as the
hearing continued and Thomas’s attorney passed on the request for a temporary injunction.[1] 
The trial court signed an agreed order to mediate.  After mediation failed, Thomas
filed a demand for arbitration against Ardyss and Cook in November 2008 with
the American Arbitration Association.

In March 2009, Thomas filed an amended arbitration demand
that omitted the claims against Cook.  In April 2009, Thomas filed an amended
petition in state court asserting claims solely against Cook.  At approximately
the same time, Thomas filed a complaint in federal district court asserting
claims solely against Ardyss.[2]

The April 2009 state court petition against Cook
asserted claims for tortious interference with prospective business advantage;
breach of the Distribution Contract; breach of fiduciary duty; conversion;
breach of the duty of good faith and fair dealing; and fraud.  In addition to
compensatory and exemplary damages, Thomas also sought attorney’s fees under
Chapter 38 of the Civil Practices and Remedies Code and an injunction.

Cook filed a second motion to compel arbitration in
the trial court on April 29, 2009.  Thomas responded to this motion and argued that
the claims she asserted against Cook were not subject to arbitration.  At a hearing
on the motion held on May 15, 2009, Cook asserted that she had filed a
counterclaim in the arbitration proceedings in December 2008 by joining
Ardyss’s arbitration counterclaim.  Thomas responded that she had not received
a pleading containing a counterclaim from Cook.  The trial court asked Cook to provide
evidence of her counterclaim, and she complied.  The trial court then signed an
order compelling the parties to arbitrate and staying all proceedings in the
trial court pending completion of the arbitration.

Thomas filed a motion to reconsider the trial court’s
order compelling arbitration.  At the June 2009 hearing on this motion, Thomas
again claimed that she had not received Cook’s counterclaim.  The trial court
noted that the counterclaim had been filed via email several months earlier,
before Thomas attempted to omit Cook from the arbitration proceedings.  The
court left it to the arbitrator to determine whether an email filing was
appropriate, and ordered the parties back to arbitration.

In early July 2009, Thomas filed in state court a
notice of motion to dismiss and non-suit as to the claims against Ardyss, and a
motion to dismiss her claims against Cook without prejudice.

The scheduled arbitration took place on July 23, 2009. 
Ardyss and Cook attended the arbitration proceeding; Thomas did not.  The
arbitrator issued his award and judgment in favor of Ardyss and Cook on August
28, 2009.  The arbitrator concluded that Thomas owed Ardyss $48,009.35, plus
reimbursement for costs and fees in the amount of $629.33.  He also concluded that
Thomas owed Cook $53,433.40, plus costs and fees reimbursement of $629.33.  The
arbitration award and judgment provided no recovery to Thomas.  

On September 14, 2009, Ardyss and Cook filed a motion
in state court to confirm the arbitration award.  Thomas subsequently filed a
motion to vacate the award.  On October 2, 2009, the trial court granted the
motion filed by Ardyss and Cook; confirmed the arbitration award; and signed a
final judgment incorporating the amounts awarded by the arbitrator.

On March 25, 2010, the United States District Court
for the Southern District of Texas signed an order dismissing Thomas’s
complaint against Ardyss because any claims she wished to pursue are barred by
res judicata and collateral estoppel in light of the trial court’s October 2009
final judgment.  The Fifth Circuit affirmed the federal district court’s
dismissal order.  Thomas v. Ardyss Int’l, Inc., No. 10-20274, 2011 WL
2682996, at *1 (5th Cir. July 11, 2011) (per curiam) (“Thomas has failed to
establish that the [federal] district court erred in dismissing her suit.  Her
collateral attacks on the state court judgment — which confirmed an arbitration
award — and on that arbitration agreement and on the arbitration award as well,
are barred by res judicata.”) (citations omitted).[3]

ANALYSIS

I.         Subject Matter Jurisdiction

As a threshold matter, we reject Thomas’s argument
that the trial court lacked subject matter jurisdiction to sign the October
2009 final judgment confirming the arbitration award because she dropped her state-court
claims against Cook and Ardyss.  Thomas’s nonsuit did not divest the trial
court of jurisdiction to sign a final judgment enforcing the arbitration award
in favor of Cook and Ardyss under the Federal Arbitration Act.

Thomas argues that no subject matter jurisdiction
existed in light of Texas Rule of Civil Procedure 162, entitled “Dismissal or
Non-Suit.”  A dismissal under this rule “shall not prejudice the right of an
adverse party to be heard on a pending claim for affirmative relief or excuse
the payment of all costs taxed by the clerk.”  Tex. R. Civ. P. 162.  According
to Thomas, Rule 162 did not preserve the trial court’s subject matter
jurisdiction after she non-suited her claims against Cook and Ardyss because
(1) Cook and Ardyss did not assert any counterclaims against her in the trial
court; (2) Cook and Ardyss sought only to enforce arbitration as to Thomas; and
(3) a request to enforce arbitration is not a “claim for affirmative relief”
under Rule 162.  Thomas’s argument fails for at least four reasons.

First, the trial court had subject matter
jurisdiction to enforce the arbitration award regardless of whether Thomas
initially asserted causes of action against Cook and Ardyss in state court, and
regardless of whether Thomas later non-suited her causes of action.

When, as here, the parties expressly invoke the Federal
Arbitration Act in the arbitration agreement at issue, the FAA governs and the
parties are not required to establish that the transaction at issue affects
interstate commerce.  See In re Choice Homes, Inc., 174 S.W.3d 408, 412
(Tex. App.—Houston [14th Dist.] 2005, orig. proceeding).

While the agreement at issue here expressly invokes
the FAA, it does not specify a particular court in which confirmation of the
arbitration decision must be pursued.  Instead, the agreement states that the
arbitrator’s decision may be “reduced to a judgment in any court of competent
jurisdiction.”  When the parties fail to specify a court in which a party may
seek rendition of judgment on the arbitration award, section 9 of the FAA may allow
the parties to seek confirmation in either federal or state court.  Palisades
Acquisition XVI, LLC v. Chatman, 288 S.W.3d 552, 555 (Tex. App.—Houston
[14th Dist.] 2009, no pet.) (“a party may seek confirmation of the arbitration
award in federal court but is not required to do so”) (citing 9 U.S.C. § 9
(2009)).

This circumstance exists because the FAA itself does
not confer subject matter jurisdiction on federal courts; a party may seek
confirmation of an arbitration award in federal court only if there is an
independent basis for federal jurisdiction.  Id. (citing Moses H.
Cone Mem’l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 26 n.32 (1983), and Specialty
Healthcare Mgmt., Inc. v. St. Mary Parish Hosp., 220 F.3d 650, 653 n.5 (5th
Cir. 2000)).  Therefore, “the federal act is enforced by both state and federal
courts.”  Chatman, 288 S.W.3d at 555 (citing Moses H. Cone Mem’l
Hosp., 460 U.S. at 25-26 & n.32); see also Tanox v. Akin, Gump,
Strauss, Hauer & Feld, L.L.P., 105 S.W.3d 244, 250-52 (Tex.
App.—Houston [14th Dist.] 2003, pet. denied).  “Because an independent basis
for federal jurisdiction is often missing, enforcement of the Federal Act is
left, in large part, to the state courts.”  Chatman, 288 S.W.3d at 556
(citing Moses H. Cone Mem’l Hosp., 460 U.S. at 26 & n.32).

This court has recognized that subject matter
jurisdiction to confirm an arbitration award under the FAA exists in Texas state
court even when (1) no party previously asserted causes of action in the trial court
before confirmation was requested; and (2) confirmation of the award resulting
from an already-completed arbitration was the only action
requested of the trial court.  See Credigy Receivables, Inc. v. Mahinay,
288 S.W.3d 565, 567-68 (Tex. App.—Houston [14th Dist.] 2009, no pet.); Chatman,
288 S.W.3d at 555-56; cf. Tex. Civ. Prac. & Rem. Code Ann. § 171.081
(Vernon 2011).  It follows that state court subject matter jurisdiction to
confirm an award under the FAA exists independently of the presence or absence
of previously asserted causes of action.  See, e.g., Tanox, 105
S.W.3d at 250-52; Credigy Receivables, 288 S.W.3d at 567-68; Chatman,
288 S.W.3d at 555-56.  If the absence of previously asserted causes of action
does not defeat a Texas court’s subject matter jurisdiction to confirm an
arbitration award under the FAA, then one party’s unilateral decision to drop
previously asserted causes of action cannot do so.

Second, a justiciable controversy existed when Cook
and Ardyss sought enforcement of the arbitration provision and award.

Justiciability doctrines such as standing, ripeness,
and mootness reflect the separation of powers doctrine and the prohibition against
court-issued advisory opinions.  Patterson v. Planned Parenthood of Houston &
Se. Tex., Inc., 971 S.W.2d 439, 442-43 (Tex. 1998) (citing Tex. Const. art.
II, § 1; art. IV, §§ 1, 22; and art. V, § 8); see also Tex. Ass’n of Bus. v.
Tex. Air Control Bd., 852 S.W.2d 440, 444 (Tex. 1993) (“[W]e have construed
our separation of powers article to prohibit courts from issuing advisory
opinions because such is the function of the executive rather than the judicial
department.”).

For a litigant to have standing, a controversy must
exist between the parties at every stage of the legal proceedings.  Williams
v. Lara, 52 S.W.3d 171, 184 (Tex. 2001).  “A case is not ripe when its
resolution depends on contingent or hypothetical facts, or upon events that
have not yet come to pass.”  Patterson, 971 S.W.2d at 443 (citing Camarena
v. Tex. Emp’t Comm’n, 754 S.W.2d 149, 151 (Tex. 1988)).  “A case becomes
moot when (1) it appears that one seeks to obtain a judgment on some
controversy, when in reality none exists, or (2) when one seeks a judgment on
some matter which, when rendered for any reason, cannot have any practical
legal effect on a then-existing controversy.”  Pantera Energy Co. v. R.R.
Comm’n of Tex., 150 S.W.3d 466, 471 (Tex. App.—Austin 2004, no pet.); see
also United Servs. Life Ins. Co. v. Delaney, 396 S.W.2d 855, 860 (Tex.
1965) (Justiciability requires “‘a real controversy between the parties, which
. . . will be actually determined by the judicial declaration sought.’”)
(quoting Bd. of Water Eng’rs v. City of San Antonio, 283 S.W.2d 722, 724
(1955)).

There is nothing contingent or hypothetical about a
request to enforce the arbitration provision and confirm the arbitration award
in favor of Cook and Ardyss.  The parties’ business dispute did not cease; nor
did their dispute regarding their respective rights against one another under
the Distribution Contract or with respect to arbitration.  Confirmation of an
arbitration award stating that Thomas owes $53,433.40 and costs to Cook, along
with $48,009.35 and costs to Ardyss, has a very definite and practical legal
effect on the parties’ continuing dispute.  Therefore, a justiciable
controversy existed and continues to exist.

Third, dismissal for lack of subject matter
jurisdiction is not warranted even if it is assumed for argument’s sake that a
motion to enforce an arbitration provision and the resulting award is not “a
pending claim for affirmative relief” for purposes of Rule 162.

“After a nonsuit, a trial court retains jurisdiction
to address collateral matters, such as motions for sanctions, even when such
motions are filed after the nonsuit, as well as jurisdiction over any remaining
counterclaims.”  The Travelers Ins. Co. v. Joachim, 315 S.W.3d 860, 863
(Tex. 2010); see also id. at 864 (a trial court retains authority “to
address proper matters after a nonsuit is entered”).  “When a court initially
has jurisdiction to grant relief to resolve a live controversy between parties
with proper standing, a party’s filing [of] a nonsuit — while rendering the merits
of the case moot — cannot deprive the court of its entire jurisdiction.”  Id.
at 865.  “Rather, the court must retain certain limited authority to dispose of
the case following a nonsuit . . . .”  Id.  The scope of a trial court’s
“necessary authority” to address “collateral” and “proper” matters following
nonsuit, id. at 863-64, depends in part on the whether such authority
advances “well-recognized policy goals” or “an express policy, as given by the
Legislature.”  Id. at 864-65.

Recognizing the trial court’s “necessary authority”
to confirm the arbitration award at issue here as a “collateral” matter
following nonsuit serves just such a purpose because enforcement of arbitration
provisions and awards is a “well-recognized policy goal[].”  See, e.g., Prudential
Sec., Inc. v. Marshall, 909 S.W.2d 896, 898-99 (Tex. 1995) (“Arbitration of
disputes is strongly favored under federal and state law.”); cf. Tex.
Civ. Prac. & Rem. Code Ann. § 171.001 (Vernon 2011); Nafta Traders, Inc.
v. Quinn, 339 S.W.3d 84, 96 (Tex. 2011) (“[T]he purpose of the [Texas Arbitration
Act] is to facilitate arbitration agreements, which have been enforceable in
Texas by Constitution or statute since at least 1845.”).  This recognition also
forecloses the possibility of an anomalous situation in which a strategic state
court nonsuit prevents confirmation of an arbitration award under the FAA in a
matter for which there is no independent basis for federal jurisdiction.  For
these reasons, the trial court’s judgment confirming the arbitration award
falls within the trial court’s “necessary authority” to address “collateral”
and “proper” matters following Thomas’s nonsuit of her causes of action against
Cook and Ardyss.  Cf. Joachim, 315 S.W.3d at 865 (trial court’s “limited
authority to dispose of the case following a nonsuit . . . includes the
necessary authority to enter a dismissal with prejudice.”).

Fourth, confirming the existence of subject matter
jurisdiction here comports with the Fifth Circuit’s decision affording res
judicata effect to the trial court’s October 2009 final judgment enforcing the
arbitration award.  See Thomas, 2011 WL 2682996, at *1.

We therefore reject Thomas’s contention that the
nonsuit of her claims against Cook and Ardyss destroyed the trial court’s
subject matter jurisdiction to confirm an arbitration award under the FAA.  A
contrary holding would (1) reward procedural maneuvering aimed at circumventing
an arbitration process that Thomas herself invoked; and (2) contravene the
strong policy favoring arbitration.  See, e.g., Dean Witter Reynolds,
Inc. v. Byrd, 470 U.S. 213, 220 (1985) (policy animating the FAA is
“motivated, first and foremost, by a congressional desire to enforce agreements
into which parties ha[ve] entered”).[4]

II.        Thomas’s Challenges to the Arbitration
Award

Having rejected Thomas’s threshold challenge to the trial
court’s subject matter jurisdiction, we now address her remaining arguments.

            A.        Challenges to Ardyss’s Award

Thomas contends that the trial court lacked authority
to address confirmation of the arbitration award as to Ardyss after she filed
her claims against Ardyss in federal court.  The basis of this contention is
not entirely clear from Thomas’s pro se briefing.  Insofar as this
contention is a restatement of Thomas’s argument that her nonsuit defeated
subject matter jurisdiction, it fails for the reasons already discussed above. 
Insofar as this contention suggests that only a federal district court can
entertain a motion to confirm an arbitration award under the FAA, it fails
because state courts also have such authority. See Moses H. Cone Mem’l Hosp.,
460 U.S. at 26 & n.32; Chatman, 288 S.W.3d at 555-56.  Thomas’s
argument also is untenable in light of the Fifth Circuit’s affirmance of the
federal district court’s dismissal order in her federal suit against Ardyss,
which afforded res judicata effect to the trial court’s October 2009 final
judgment affirming the arbitration award.  See Thomas, 2011 WL 2682996,
at *1.

            B.        Challenges to Cook’s Award

Thomas contends that the final judgment confirming
the arbitration award as to Cook is erroneous because (1) Cook failed to
establish the existence of an agreement to arbitrate between Cook and Thomas;
(2) the award creates an unenforceable indemnity obligation between Thomas and
Cook; (3) the arbitrator exceeded his authority; and (4) the award is improper
under Stolt-Nielsen, S.A. v. AnimalFeeds International Corp., 130 S. Ct.
1758 (2010).

We apply de novo review to a trial court’s
decision confirming an arbitration award, recognizing that the statutory grounds
for vacatur under the FAA are limited.  See, e.g., Statewide
Remodeling, Inc. v. Williams, 244 S.W.3d 564, 567–68 (Tex. App.—Dallas
2008, no pet.); see also Hall Street Assocs., L.L.C. v. Mattel, Inc.,
552 U.S. 576, 582-89 (2008).  Under the FAA, an arbitration award may be
vacated when (1) the award was procured by corruption, fraud, or undue means;
(2) there was evident partiality or corruption in the arbitrators; (3) the
arbitrators were guilty of misconduct in refusing to postpone the hearing, upon
sufficient cause shown, or in refusing to hear evidence pertinent and material
to the controversy; or (4) the arbitrators exceeded their powers, or so
imperfectly executed them that a mutual, final and definite award upon the
subject matter submitted was not made.  9 U.S.C. § 10(a) (2006).[5]

1.         The agreement to arbitrate encompasses
Thomas’s disputes with Cook

A party seeking to enforce arbitration rights under
the FAA must establish that (1) a valid arbitration agreement exists; and (2)
the claims at issue fall within the agreement’s scope.  In re Kellogg Brown
& Root, Inc., 166 S.W.3d 732, 737 (Tex. 2005) (orig. proceeding). 
Thomas contends that no arbitration agreement existed between Thomas and Cook. 
According to Thomas, (1) the arbitration provision applies only to disputes
between Thomas and Ardyss; and (2) the arbitration clause no longer was germane
to this litigation once she nonsuited her state court claims against Ardyss.  

Thomas’s contentions miss the mark.  Ardyss submitted
a copy of the Distribution Contract and the incorporated Ardyss Policies and
Procedures Manual to the trial court.  Thomas and Cook both are signatories to
the Distribution Contract.  Section 9.3 of the Policies and Procedures Manual incorporated
into the Distribution Contract mandates arbitration for “[a]ny controversy or
claim arising out of or relating to the Agreement, or the Breach thereof . . .
.”  This broad language (1) is part of the Distribution Contract signed by both
Thomas and Cook, and (2) encompasses Thomas’s dispute with Cook arising in
connection with the Distribution Contract regardless of the status of Thomas’s
claims against Ardyss.  These conclusions are confirmed by the substance of
Thomas’s allegations against Cook, which include allegations that Cook breached
the Distribution Contract.  These conclusions also are confirmed by Thomas’s
own demand for arbitration of her claims against Cook.  See Tanox, 105
S.W.3d at 267 

2.         Indemnity is a merits-based
argument that provides no basis for vacatur

Thomas contends that the arbitration award in favor of
Cook should be vacated because the arbitrator improperly interpreted the
Distribution Contract and the Policies and Procedures Manual to create an obligation
under which Thomas as “co-applicant” must indemnify Cook as “applicant” for certain
attorney’s fees and costs.  This contention provides no basis for vacatur under
section 10(a) of the FAA because it focuses on the merits of the parties’ contractual
dispute rather than one of the enumerated statutory grounds for vacatur.  “The
court may not review the arbitrators’ decision on the merits even if it is
alleged that the decision is based on factual error or it misinterprets the
parties’ agreement.”  Id. at 250 (citing Major League Baseball
Players Ass’n v. Garvey, 532 U.S. 504, 509 (2001), and United Paperworkers
Int’l Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 36 (1987)). 

                        3.         The arbitrator
did not exceed his authority

Thomas next argues that the arbitrator exceeded his
authority by “deciding matters not properly before him.”

In part, Thomas restates her arguments concerning the
arbitrator’s supposed recognition of an improper indemnity obligation.  As
discussed above, this argument provides no basis for vacatur because it
challenges the arbitrator’s resolution as to the merits of the parties’ contract
dispute.  See Tanox, 105 S.W.3d at 250.

Thomas also contends that the arbitrator exceeded his
authority by addressing all of the causes of action she asserted against Cook.   We
reject this contention because the trial court properly sent all of the causes
of action Thomas asserted against Cook, contract and tort alike, to
arbitration.  See id. at 267 (“[A]ny doubts concerning the scope of
arbitrable issues should be resolved in favor of arbitration.”) (citing Moses
H. Cone Mem’l Hosp., 460 U.S. at 24-25); see also Neal v. Hardee’s Food
Sys., Inc., 918 F.2d 34, 37 (5th Cir. 1990) (arbitration should not be
denied “‘unless it can be said with positive assurance that an arbitration
clause is not susceptible of an interpretation which would cover the dispute at
issue’”) (quoting Commerce Park at DFW Freeport v. Mardian Constr. Co.,
729 F.2d 334, 38 (5th Cir. 1984)).

                        4.         Stolt-Nielson
has no application in this context

Finally, Thomas argues that expansive review of the
merits of the arbitration award is authorized under Stolt-Nielsen, S.A.,
130 S. Ct. at 1775.  Thomas misplaces her reliance on this case.

Stolt-Nielsen held that an arbitration panel
exceeded its power under section 10(a)(4) of the FAA when it imposed class-wide
arbitration in the absence of an agreement authorizing class arbitration.  Id.
at 1775.  In so doing, the Supreme Court stressed that “[a]n implicit agreement
to authorize class-action arbitration . . . is not a term that the arbitrator
may infer solely from the fact of the parties’ agreement to arbitrate.”  Id. 
Stolt-Nielsen has no application here because Thomas’s claims raise no
issue involving the propriety of imposing class arbitration on parties who have
not agreed to authorize class arbitration.

CONCLUSION

We affirm the trial court’s final judgment confirming
the arbitration award.

                                                                                    

                                                            /s/                    William
J. Boyce

                                                                                    Justice

 

 

Panel consists of Chief Justice
Hedges and Justices Seymore and Boyce. (Hedges, C.J., dissenting).









[1] 
Thomas subsequently began representing herself in connection with the
litigation and the arbitration.





[2] 
Thomas contends that she “removed” her claims against Ardyss to the United
States District Court for the Southern District of Texas on April 27, 2009. 
The docket sheet for Elizabeth Thomas v. Ardyss International, Civil
Action 4:09-CV-1366 in the United States District Court for the Southern
District of Texas, indicates that Thomas’s federal court complaint against
Ardyss was docketed as having been filed on May 5, 2009.  We take judicial
notice of the docket sheet in Civil Action 4:09-CV-1366.  See Tex. R.
Evid. 201.





[3] 
We conclude that citation of this unpublished opinion is appropriate under the
circumstances of this case in light of 5th Cir. R. 47.5.4.  





[4] 
In light of our holding, we need not decide whether a request to enforce
arbitration is a claim for relief independent of the plaintiff’s causes of
action for purposes of Rule 162.  Compare In re Riggs, 315 S.W.3d 613,
615 (Tex. App.—Fort Worth 2010, orig. proceeding) (request to enforce
arbitration is not a claim for affirmative relief under Rule 162), with Joe
Williamson Constr. Co. v. Raymondville Indep. Sch. Dist., 251 S.W.3d 800,
805–06 (Tex. App.—Corpus Christi 2008, no pet.) (arbitration claim survives
filing of non-suit because it is a claim for relief independent of the
plaintiff’s causes of action under Rule 162), and Quanto Int’l Co. v.
Lloyd, 897 S.W.2d 482, 487 (Tex. App.—Houston [1st Dist.] 1995, orig.
proceeding) (same).





[5] 
Given the nature of Thomas’s arguments, the language in the Policies and
Procedures Manual, and the parties’ exclusive invocation of the FAA in the
manual, we need not address the circumstances under which parties can expand
upon statutory grounds for vacating an arbitration award in a contract governed
by both the Texas Arbitration Act and the FAA.  Compare Hall Street Assoc.
L.L.C., 552 U.S. at 578 (statutory vacatur and modification grounds
under the FAA are exclusive and cannot be “supplemented by contract”), with
Nafta Traders, Inc., 339 S.W.3d at 98 (Texas Arbitration Act “permits
parties to agree to expanded judicial review of arbitration awards.”); see
also Nafta Traders, Inc., 339 S.W.3d at 101 (“[T]he FAA does not preempt
enforcement of an agreement for expanded judicial review of an arbitration
award enforceable under the TAA.”).  The Policies and Procedures Manual
contains no language purporting to authorize expanded judicial review.  We also
need not address the extent, if any, to which common law vacatur doctrines such
as “manifest disregard” survive Hall Street.  See Stolt-Nielsen,
S.A., 130 S. Ct. at 1768 & n.3 (citing Hall Street Assocs., L.L.C.,
552 U.S. at 585).